UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

XIN CHEN and
LIQIN REN,

             Petitioners,

v.

UNITED STATES OF AMERICA,
COMMISSIONER OF THE IRS,
and REVENUE AGENT FOR IRS,

             Respondents.
_____/

Case No. 5:21-mc-51315
District Judge Judith E. Levy
Magistrate Judge Anthony P. Patti

**<u>REPORT AND RECOMMENDATION TO GRANT IN PART and DENY IN
PART (1) THE PETITION TO QUASH IRS 3RD PARTY SUMMONSES
(ECF No. 1) and (2) THE MOTION TO DISMISS (ECF No. 5)</u>**

**I.**    **RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court:  **(1) GRANT** the petition to quash IRS 3rd

party summonses (ECF No. 1), but only to the extent the summonses seek

information for 2005 to 2016; and, **(2) DENY** Respondents' motion to dismiss

(ECF No. 5), but only to the extent it defends the request for information for 2005

to 2016.  In sum, Petitioners should be required to respond to the summons, but

only to the extent they seek information for 2017 and 2018.

**II.**    **REPORT**

    **A.**    **Background**

The Internal Revenue Service (IRS), through its Revenue Agent Kimberly

Elliott, is conducting two separate examinations concerning the Petitioners:

1.      to determine "the liabilities or possible liabilities of Xin Chen
        ('Chen') and Liqin Ren ('Ren') for their joint income taxes
        (Form 1040) for 2017 and 2018[;]" and,

2.      to determine "the possible liabilities of Chen and Ren for
        penalties for failure to report their interests in foreign
        corporations (Form 5471) for 2005-2018[,]" "possible liability
        for penalties for Chen's failure to report foreign bank and
        financial accounts ([Financial Crimes Enforcement Network]
        FinCEN Form 114) for years 2016-2018[,]" and "possible
        liability for penalties for Ren's failure to report certain foreign
        gifts (Form 3520) for 2017."

(ECF No. 5-1, PageID.85-86 ¶ 4.)  As to the alleged failures to file Form 5471,

Petitioners contend the Government assessed a total of $1,220,000 in penalties for

thirteen entities for the period 2005 to 2018.  (ECF No. 1-4, PageID.38-40.)[1]

The instant matter involves the Form 1040 examination for the years 2017

and 2018.  Petitioners explain that, "[t]hroughout early 2020 and continuing into

2021, Respondents, . . . issued numerous Information Document Requests [IDRs]

of the Petitioners for the years 2017 and 2018, to which Petitioners complied as

_____

[1] It seems the IRS issued thirteen "Failure to File Form 5471" notices.  (ECF No.
1-4, PageID.3, 6, 38.)  For example, the $140,000 listed for Global Optima
Automotive (Shanghai) Co Ltd is consistent with the IRS's August 2, 2021 Failure
to File Form 5471 as to Global Optima Automotive (Shanghai) Co., Ltd., which
warns of a $10,000 penalty per failure for the fourteen-year period from 2005-
2018.  (ECF No. 1-4, PageID.38; ECF No. 11-1, PageID.273.)

timely and completely as possible[.]"  (ECF No. 1, PageID.3 ¶ 7; ECF No. 1-4, PageID.37.)  The record contains examples of multiple Forms 4564 (IDRs) dated February to August 2020.  (ECF No. 9-2, PageID.164-185.)

### B.    Summonses

On September 28, 2021, the IRS issued summonses to Wanru Hsieh, CPA and Jane F. Wang, CPA regarding the IRS's examination of Xin Chen and Liqin Ren for the period January 1, 2017 to December 31, 2018.  (ECF Nos. 1-2, 1-3.) The summonses defined "Taxpayers" as including Chen, Ren, and twelve entities. (ECF No. 1-2, PageID.16 ¶ II; ECF No. 1-3, PageID.24 ¶ II.)  Importantly, the summonses provide:  "Unless otherwise stated, the default date range of requests in this Summons is January 1, 2005 through December 31, 2018."  (ECF No. 1-2, PageID.17 ¶ V; ECF No. 1-3, PageID.25 ¶ V.)  Moreover, the summonses requested, *inter alia*, Petitioners' "state, federal, and foreign tax returns," and documents relating to  "foreign financial accounts" and "foreign entities" owned or controlled by Petitioners.  (ECF No. 1-2, PageID.18; ECF No. 1-3, PageID.26.)

The summonses required Hsieh and Wang to appear before IRS officer Kimberly D. Elliott on October 21, 2021.  On October 18, 2021, Chen and Ren ("Petitioners") filed a petition to quash IRS 3rd party summonses pursuant to 26 U.S.C. § 7609(B).  (ECF No. 1.)  Specifically, they seek to "quash the Summonses

with regard to any discovery for years *prior to* the audit years, 2017 and 2018."
(ECF No. 1, PageID.8 (emphasis added).)

### C.     Pending Matter

Currently before the Court is Respondents' January 27, 2022 motion to
dismiss (ECF No. 5), which asks the Court "to deny the relief requested in
Petitioners' motion[,]" (*id*., PageID.57), and which Judge Levy has referred to me
for a report and recommendation (ECF No. 6).  Petitioners have filed a response
(ECF No. 9), the United States has filed a reply (ECF No. 11), and the parties have
submitted a joint statement of unresolved issues (ECF No. 10).

On March 16, 2022, I conducted an in-person hearing, at which Attorneys
Eric T. Weiss and Julia M. Glen appeared.[2]  The Court entertained oral argument
and took the matter under advisement.

### D.     Standard

The Internal Revenue Code contains several provisions dedicated to
examination and inspection.  *See* 26 U.S.C. §§ 7601-7613.  Petitioners
acknowledge that the "IRS has broad authority to issue summonses under 26
U.S.C. § 7602[,]" (ECF No. 1-4, PageID.40), which provides, in pertinent part:

> For the purpose of ascertaining the correctness of any return, making
> a return where none has been made, determining the liability of any
> person for any internal revenue tax or the liability at law or in equity

---

[2] The Court reminded Attorney Weiss to file an appearance in this matter.  As of
April 14, 2022, this has yet to occur.  <u>He is directed to do so immediately</u>.

> of any transferee or fiduciary of any person in respect of any internal revenue tax, or collecting any such liability, the Secretary is authorized—
>
> (1) To examine any books, papers, records, or other data which may be relevant or material to such inquiry[.]

26 U.S.C. § 7602(a)(1).

Nonetheless, they seek to quash the summonses pursuant to 26 U.S.C. § 7609 ("Special procedures for third-party summonses"), the relevant portion of which provides:

> (A)    In general.--Notwithstanding any other law or rule of law, any person who is entitled to notice of a summons under subsection (a) shall have the right to begin a proceeding to quash such summons not later than the 20th day after the day such notice is given in the manner provided in subsection (a)(2). In any such proceeding, the Secretary may seek to compel compliance with the summons.
>
> (B)    Requirement of notice to person summoned and to Secretary.-- If any person begins a proceeding under subparagraph (A) with respect to any summons, not later than the close of the 20-day period referred to in subparagraph (A) such person shall mail by registered or certified mail a copy of the petition to the person summoned and to such office as the Secretary may direct in the notice referred to in subsection (a)(1).
>
> (C)    Intervention; etc.--Notwithstanding any other law or rule of law, the person summoned shall have the right to intervene in any proceeding under subparagraph (A). Such person shall be bound by the decision in such proceeding (whether or not the person intervenes in such proceeding).

26 U.S.C. § 7609(b)(2).

As the Supreme Court has stated, "the Commissioner need not meet any standard of probable cause to obtain enforcement of his summons, either before or after the three-year statute of limitations on ordinary tax liabilities has expired.  He must show that [1] the investigation will be conducted pursuant to a legitimate purpose, that [2] the inquiry may be relevant to the purpose, that [3] the information sought is not already within the Commissioner's possession, and that [4] the administrative steps required by the Code have been followed . . . ."  *United States v. Powell*, 379 U.S. 48, 57–58 (1964).  "The requisite showing is generally made by the submission of the affidavit of the agent who issued the summons and who is seeking enforcement."  *United States v. Will*, 671 F.2d 963, 966 (6th Cir. 1982) (citing *United States v. Garden State National Bank*, 607 F.2d 61, 68 (3rd Cir. 1979)).

Respondent Elliott has provided two declarations in this case, one dated January 27, 2022 (ECF No. 5-1) and the other dated March 11, 2022 (ECF No. 11-1).  "Once the IRS meets its prima facie burden, it falls on the challenging party either to dispute the affidavit's facts or demonstrate that enforcement would constitute an abuse of process."  *United States v. AS Holdings Grp., LLC*, 521 F. App'x 405, 409 (6th Cir. 2013) (citing *United States v. Monumental Life Ins. Co.*, 440 F.3d 729, 733 (6th Cir. 2006)).

### E.    Discussion

6

Petitioners argue that the summonses "do not meet any of the first three prongs of the *Powell* test[.]"  (ECF No. 9, PageID.153; *see also* ECF No. 10, PageID.254-255.)  The United States argues it has "made a prima facie showing of the *Powell* factors and Petitioners failed to meet their burden to overcome it." (ECF No. 11, PageID.260-261; *see also* ECF No. 5, PageID.76.)

> ### 1.    FACTOR 1:  Whether the summonses were issued for a legitimate purpose?

"The Supreme Court has cautioned that 'those opposing enforcement of a summons do bear the burden to disprove the actual existence of a valid civil tax determination or collection purpose by the Service.'"  *Byers v. United States Internal Revenue Serv.*, 963 F.3d 548, 557 (6th Cir. 2020) (quoting *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 316 (1978), *superseded by statute on other grounds*, Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. No. 97-248, § 333, 96 Stat 324, 622–23 (1982)). "[A]lthough bare assertion or conjecture is not enough, neither is a fleshed out case demanded:  The taxpayer need only make a showing of facts that give rise to a plausible inference of improper motive." *United States v. Clarke*, 573 U.S. 248, 254 (2014).

Petitioners contend that, "[w]ith regard to those inquiries for periods prior to 2017, it appears that the only purpose of the information sought from the Summonses is to substantiate Respondents' position regarding the already issued Form 5471 penalties."  (ECF No. 1-4, PageID.40-41.)  Elliott attests she "served

the summonses in good faith, as [she] believe[s] they will produce information that [is] relevant and necessary to [her] ongoing examination of Chen and Ren's 2017 and 2018 income tax liabilities." (ECF No. 5-1, PageID.99 ¶ 36.) (*See also* ECF No. 1, PageID.5-6 ¶ 10; ECF No. 5, PageID.76.)

In their response, Petitioners assert: (a) the IRS summonses at issue here "do not meet the *Powell* requirements for good faith[;]" (b) the Government "has not met its slight burden of establishing a legitimate purpose for issuing the summonses . . . [;]" and, (c) "[t]here is an improper motive behind the summonses." (ECF No. 9, PageID.153-157.) True, Petitioners contend that the IRS concluded its examination for alleged failures to file Form 5471 *just prior to* issuing the September 28, 2021 summonses. (ECF No. 10, PageID.255.) Nonetheless, the initiating petition in this case seeks to quash the summonses "with regard to any discovery for years *prior to* the audit years, 2017 and 2018." (ECF No. 1, PageID.8 (emphasis added).) Moreover, because Petitioners "have no objection to any information summonsed for [2017 and 2018][,]" (ECF No. 9, PageID.155), and because Petitioners allegedly "would not have objected" to a summons seeking "documentation and information . . . regarding [certain] entities for the years 2017 and 2018," (*id.*, PageID.156), the dispute here is more one of scope than of propriety.

Focusing on the *propriety* of the IRS's summonses to Petitioner's accountants, Petitioners seem to agree that the summonses are appropriate as to 2017 and 2018, a point which they further conceded at oral argument. Accordingly, the Court should find that, at least as to 2017 and 2018, Agent Elliott "served the summonses in good faith . . . ." for the legitimate purpose "to obtain information relevant and necessary to the ongoing examination of [Petitioners'] Form 1040 income tax liabilities for 2017 and 2018." (ECF No. 5-1, PageID.99 ¶ 36; ECF No. 5, PageID.76.) The parties' related disputes over the *scope* of the summonses – whether based on time or entities (*see* ECF No. 9, PageID.153-157 and ECF No. 11, PageID.261-264) – will be addressed below.

> ## 2.      FACTOR 2:  Even if a legitimate purpose could be found, whether the summonses are overly broad and irrelevant to a legitimate purpose?

"A summons will be deemed unreasonable and unenforceable if it is *overbroad and disproportionate* to the end sought." *United States v. Theodore*, 479 F.2d 749, 754 (4th Cir. 1973) (emphasis added) (citing *United States v. Harrington*, 388 F.2d 520, 523 (2d Cir. 1968)). Overbreadth has been described as being "of such a sweeping nature and so unrelated to the matter as to exceed the investigatory power of the agency." *Nuechter v. United States*, No. CV 00-06681 LGB(AIJ), 2001 WL 1244757, at *5 (C.D. Cal. July 13, 2001) (internal quotations and external citation omitted). *See also United States v. Morton Salt Co.*, 338 U.S.

9

632, 652, 70 S. Ct. 357, 369, 94 L. Ed. 401 (1950) ("a governmental investigation into corporate matters may be of such a sweeping nature and so unrelated to the matter properly under inquiry as to exceed the investigatory power.") (citation omitted); *Calamari v. United States*, No. 02-X-74762, 2003 WL 345852, at *2 (E.D. Mich. Jan. 23, 2003) (Whalen, M.J.) (quoting *Theodore*, 479 F.2d at 754), *report and recommendation adopted*, No. 02-X-74762, 2004 WL 909433 (E.D. Mich. Mar. 18, 2004).  "[J]udicial protection against the sweeping or irrelevant order is particularly appropriate in matters where the demand for records is directed not to the taxpayer but to a third-party who may have had some dealing with the person under investigation." *Harrington*, 388 F.2d at 523.  Courts caution that "the Internal Revenue Service is not to be given unrestricted license to rummage through the office files of an accountant in the hope of perchance discovering information" and "cannot go on a 'fishing expedition'" through an accountant's records. *Theodore*, 479 F.2d at 754 (quoting *United States. v. Dauphin Deposit Tr. Co*., 385 F.2d 129, 131 (3d Cir. 1967)).  Thus, "where it appears that the purpose of the summons is 'a rambling exploration' of a third party's files, it will not be enforced." *Theodore*, 479 F.2d at 754 (citing *Harrington, supra*.)  The question is "whether from what the Government already knows there exists the requisite nexus between taxpayer and records of another's affairs to make the investigation reasonable— in short, whether the 'might' in the

articulated standard, 'might throw light upon the correctness of the return,' is in the particular circumstances an indication of a realistic expectation rather than an idle hope that something may be discovered." *Harrington*, 388 F.2d at 524.  As to Section 7602, "[t]he standard is not the form of the record but whether it might *shed light* on the accuracy of the taxpayer's returns." *United States v. Davey*, 543 F.2d 996, 999 (2d Cir. 1976) (emphasis added).

> **a.   The foreign gifts (Form 3520), bank account (FinCEN Form 114) examinations, and income tax (Form 1040) examinations have similar time spans.**

According to the Government, Petitioners "failed to file correct tax returns for 2017 and 2018 and have failed to cooperate with the IRS's examination of those returns."  (ECF No. 5, PageID.63-65.)  As for Petitioners' "failure to provide complete and accurate information," Elliott attests that their "false statements and omissions have obstructed and delayed [h]er examination[,]" such as their original 2017 return (which did not include a Form 3520), an unfiled Form 3520 (disclosing gifts in the amount of $545,711), a delinquent Form 3520 (disclosing gifts in the amount of $746,150.60), and a second amended Form 3520 (disclosing gifts in the amount of $770,000).  (ECF No. 5-1, PageID.90 ¶ 18a.)  In reply to Petitioners' response that "[there] is no benefit to the Petitioners under-reporting gifts[,]" (ECF No. 9, PgaeID.151), the Government counters:  "there is great benefit to *over-reporting* gifts," (ECF No. 11, PageID.265 (emphasis in original)),

because "[r]eporting these unexplained deposits as gifts from foreign sources makes them nontaxable income[,]" (ECF No. 5-1, PageID.90 ¶ 18a).

Turning from gifts to bank accounts, Elliott attests it is "likely there are additional bank accounts that the taxpayers did not disclose . . . [,]" based on "potential unfiled domestic entities," and "undisclosed bank accounts that [she] discovered through a bank summons."  (ECF No. 5-1, PageID.91-92 ¶¶ 18b, 18c.) Similarly, she attests:

> Given the number of entities listed below and similar sounding names, based on my training and experience, it is likely that these entities have bank accounts that have not been disclosed during the course of examination.  Therefore, I also have reason to believe that Chen and Ren have custody or control over bank accounts under the name of some of these entities.  Information regarding these accounts may be relevant to the ongoing examination of Chen and Ren's income tax liabilities for 2017 and 2018.

(*Id.*, PageID.94 ¶ 22.)

Here, it is important to note the IRS's representations that the examination for "failure to report bank and financial accounts (FinCEN Form 114)" is only for years 2016-2018, and the examination for "possible liability for penalties for Ren's failure to report certain foreign gifts (Form 3520)" is only for the year 2017.  (ECF No. 5-1, PageID.85-86 ¶ 4.)  Thus, the time span of these examinations is similar to the 2017-2018 joint income taxes (Form 1040) examination – a similarity that explains why the instant matter, which challenges the breadth of a thirteen year

12

summons in a two year income tax examination, focuses on the multi-year Form 5471 penalty examination.

> **b.   The time span of the "ongoing" Form 5471 penalty examination (2005-2018) is *much broader* than the time span of the 2017-2018 joint income taxes (Form 1040) examination.**

Preliminarily, the Government notes that "the Form 5471 penalty examination is ongoing and the IRS has not assessed any Form 5471 penalties against Petitioners for 2005-2018[,]" which it supports with references to the IRS's August 2, 2021 notice of failure to file Form 5471 as to Global Optima Automotive (Shanghai) Co., Ltd. (ECF No. 11-1, PageID.273) and Petitioners' October 29, 2021 protest letter (ECF No. 9-4, PageID.190-217).  (ECF No. 11, PageID.261-262; ECF No. 11-1, PageID.268-272 ¶¶ 6-8.)  Tellingly, Elliott declares:

> *Because the Form 5471 Penalty examination is ongoing, I could obtain more information for the Form 5471 Penalty examination.*  For this examination, I could obtain information through a variety of ways, including issuing third-party summonses, having third-party contact with any individual who could be relevant to or have information on the Form 5471 penalties, conduct interviews with the Petitioners and third parties, and/or issue Information Document Requests [IDRs] related to Form 5471 Penalties.

(ECF No. 11-1, PageID.271 ¶ 9 (emphasis added); *see also id*., PageID.11-1, PageID.269 ¶ 6.)  Thus, even if "information that would likely assist the IRS in determining Petitioners' 2017 and 2018 income tax liabilities" (*i.e.*, the Form 1040 examination) would include "information that could also be relevant to the Form

5471 penalty examination[,]" (ECF No. 11, PageID.262-263), <u>one wonders why</u> <u>the IRS does not seek the 2005 to 2016 information by issuing a related summons</u> <u>in connection with the Form 5471 Penalty examination</u>.

> **c.      The parties dispute the relevance of 2005 through 2016 information to the 2017-2018 income tax liability (Form 1040) examination.**

Petitioners' overbreadth and relevance objections are directed to requests for information prior to 2017 – *i.e.*, 2005 through 2016.  They claim these years "are not subject to IRS audit . . . ."  (ECF No. 1, PageID.5 ¶ 10.)  They contend that the Government has not offered "any specific explanation as to how such information and documentation is relevant to the ongoing audit for 2017 and 2018 other than a vague statement that it's tied to the penalty cases and therefore relevant to Petitioners individually[,]" or "specifically described what information it seeks for years prior to 2017 that could be relevant to the 2017 and 2018 audit years."  (ECF No. 1-4, PageID.41-42.)  Petitioners conclude "[i]t is unclear how Petitioners' personal tax reporting and ancillary documents for the years 2005 through 2016 is relevant to IRS for the audit years 2017 and 2018."  (*Id.*, PageID.44.)  (*See also* ECF No. 9, PageID.158-160.)

The Government asserts that:  (1) "[a]ffiliations with entities and the existence of accounts, foreign and domestic, affect income tax liabilities[,]" in part because "U.S. citizens are subject to tax on income received from foreign

14

entities[,]" (ECF No. 5, PageID.65-66); and, (2) "[i]nformation from years prior to 2017 may be relevant in determining liability for 2017 and 2018[,]" in part because "[a] foreign entity's tax status depends on its financial activities in that year and in years prior[,]" and because "[i]nformation for prior years will assist the IRS in understanding Chen and Ren's financial activities in 2017 and 2018[,]" (ECF No. 5, PageID.66-68). (*See also* ECF No. 5, PageID.76-82; ECF No. 5-1, PageID.87-88 ¶¶ 10-13 [Elliott Affid.].)

> **i.    The summonses' definition of "Taxpayers" does not exclude the summonses' request for information on foreign entities, foreign accounts, or foreign gifts.**

As a preliminarily matter, the summonses' definition of "Taxpayers" does not – on its own – negate its requests for information on foreign entities, accounts or gifts. True, the summonses' definition of "Taxpayers" is comprised of Petitioners (Chen, Ren) and twelve entities (ECF No. 5-1, PageID.114, 128), each of which Petitioners contend "are domestic companies, ***and not foreign entities***." (ECF No. 9, PageID.154 (emphasis in original).) Additionally, Petitioners contend that "only 4 were in existence during the tax years in question, 2017 and 2018," namely: (i) Global Optima, LLC (previously known as UM Consulting, LLC); (ii) Federal Technology, LLC (also known as Unite Maxtech Consulting, LLC, which was previously known as UM Consulting, LLC); (iii) ZD Metal Products, Inc.; and, (iv) ZD Properties LLC. (*Id.*, PageID.154-155.) Petitioners do not object to

15

their CPAs responding to the summonses to the extent "such information is limited to the entities owned by Petitioners in 2017 and 2018[.]"  (*Id.*, PageID.158; *see also id.*, PageID.155.)

Comparing the Flow-Chart and Excel Sheet of Petitioners' interests / relationships (ECF No. 9-13, PageID.249, 251-253) with the summonses' definition of "Taxpayer," it seems that all entities on the summonses are domestic, perhaps with the exception of Global Optimal, Inc., which is listed as a domestic and a foreign (British Virgin Islands) entity.  (ECF No. 1-2, PageID.16 ¶ II; ECF No. 1-3, PageID.24 ¶ II; ECF No. 9-13, PageID.249, 251.)[3]  Nonetheless, the Government contends that the summonses and IDRs "requested both foreign and domestic information[,]" (ECF No. 11, PageID.263-264), which is supported by the summonses' requests for Taypayers' "state, federal, and foreign tax returns," documents relating to Taypayers' "foreign financial accounts," and "foreign entities" owned or controlled by Taxpayers (*id.*, PageID.116, 130 [¶¶ 3d, 5 & 6]).  Thus, even if the summonses' definition of "Taxpayers" does not contain foreign entities, the Court must still consider whether the summonses' breadth is relevant

---

[3] Petitioners also attach copies of Delaware Department of State (Division of Corporations) and Michigan Corporation Division searches for Global Optima, Inc. (ECF No. 9-6), Global Optimal, Inc. (ECF No. 9-7), UM Consulting, LLC (ECF No. 9-8), Federal Technology, LC (ECF No. 9-9), United Maxtech Consulting, Inc. (ECF No. 9-10), Clifford and Associates, Inc. (ECF No. 9-11), and Diversified Metal Products, Inc. (ECF No. 9-12).

16

as to the 2017-2018 income tax examination of domestic Taxpayers, because domestic Taxpayers may or may not have information responsive to the summonses' request for information about foreign entities, foreign accounts, and/or foreign gifts.

### ii.   At least some of the entities listed on the summonses were created or in existence in 2005.

When arguing that "[t]he summoned information is relevant to the stated purpose[,]" (ECF No. 5, PageID.76-82), the Government asserts that "[m]any of the entities, disclosed and undisclosed, were either created or in existence in 2005." (*Id.*, PageID.78.)  Specifically, Elliott attests:

> [She] also expect[s] that records from years prior to 2017 would assist me in understanding the source and pattern of Chen and Ren's income, which is important when calculating their income tax liability for 2017 and 2018.  As discussed below and in the chart attached as Exhibit A [ECF No. 5-1, PageID.101], Chen and Ren held direct and indirect interests in numerous entities, foreign and domestic.  *I have determined that at least some of these entities were created or were in existence in 2005.*

(*Id.*, PageID.89 ¶ 17 (emphasis added).)  Similarly, Elliott's declaration contains a chart, which lists entities – some formed as early as 2001 – she has discovered in which Petitioners have ownership interests or to which they have connections or by which they were employed in 2017 or 2018.  (ECF No. 5-1, PageID.94-96 ¶ 23.)  Elliott attests she has *reason to believe* that "information about these entities and Chen and Ren's involvement with or interest in these entities dating *back to 2005*

will be relevant to my examination of Chen and Ren's 2017 and 2018 income tax liabilities."  (ECF No. 5-1, PageID.97 ¶ 25 (emphasis added).)

> ### iii.   The Government's reliance on "Subpart F" and the Tax Cuts and Jobs Act is too general to support the summonses' 14-year time frame.

The Government claims that "[t]he requested information is relevant to understanding Chen and Ren's ownership interests and the patterns and sources of their income related to the foreign entities dating back to 2005, so the IRS can accurately attribute any income tax for dividends, wages, Subpart F liabilities, and the 2018 repatriation tax."  (ECF No. 5, PageID.78.)  The Court assumes the references to a "one-time tax" imposed by the Tax Cuts and Jobs Act and the "one-time repatriation tax" are used interchangeably, consistent with the August 1, 2018 Department of Treasury statement.  (*Id*., PageID.67, 71, 78.)[4]

Elliott attests that "the tax status of a foreign corporation in a[ny] given year depends on its financial activities in that year and in prior years[,]" as an example of which she cites "Subpart F income[,]" *i.e.*, statutes regarding controlled foreign corporations (26 U.S.C. §§ 951-965).  (ECF No. 5-1, PageID.88 ¶ 14.)  She also

---

[4] "The United States Department of the Treasury today announced the release of proposed regulations relating to the section 965 transition tax, on U.S. multinational companies' overseas income, which is being repatriated under section 965 of the Tax Cuts and Jobs Act."  Treasury Announces Guidance on One-Time Repatriation Tax on Foreign Earnings, Treas. SM-452, 2018 WL 3640889 (Aug. 1, 2018).

attests that, "for income tax year 2018, the Tax Cuts and Jobs Act imposed a one-time tax on U.S. owners of foreign businesses with certain accumulated profits." (*Id*., PageID.89 ¶ 15.)  And, she attests that Petitioners "may be liable for U.S. tax in 2018 [in] connection with the one-time repatriation tax on income earned by foreign entities in prior years."  (*Id*., PageID.89 ¶ 26.)

Unfortunately, it is not clear upon which section of Subpart F or of the Tax Cuts and Jobs Act the Government relies.  Thus, the Court is not in a position to determine whether these citations support the argument that 2005-2016 information will "shed light" on the 2017-2018 income tax examinations.

> **iv.    It does not seem that 2005-2016 information would be relevant to the 2017-2018 examination regarding pass-through entities (*e.g.*, partnerships and S corporations).**

As to domestic entities in which Petitioners have ownership interests or with which they have connections, Elliott attests:  "Taxpayers who own interests in pass-through entities such as partnerships must generally pay U.S. income tax on their share of the partnership's income.  Chen and Ren's ownership interests in partnerships and other pass-through entities are . . . relevant to determining their 2017 and 2018 income tax liability."  (*Id*., PageID.93 ¶ 21.)  Pass-through taxation is:

> The taxation of an entity's owners for the entity's income without taxing the entity itself.  Partnerships and S corporations are taxed under this method.  So are limited liability companies and limited

19

> liability partnerships unless they elect to be taxed as corporations by
> 'checking the box' on their income tax returns.  The election is made
> on Form 8832 (Entity Classification Election).

TAXATION, Black's Law Dictionary (11th ed. 2019).  As the IRS explains, a

partnership "does not pay income tax.  Instead, it 'passes through' profits or losses

to its partners.  Each partner reports their share of the partnership's income or loss

on their personal tax return."  *See* https://www.irs.gov/businesses/partnerships

(emphasis omitted).  Likewise, S corporations "are corporations that elect to pass

corporate income, losses, deductions, and credits through to their shareholders for

federal tax purposes.  Shareholders of S corporations report the flow-through of

income and losses on their personal tax returns and are assessed tax at their

individual income tax rates."  *See* https://www.irs.gov/businesses/small-

businesses-self-employed/s-corporations.

On this issue, Petitioners convincingly contend that Petitioner Chen's

ownership of pass-through entities in 2017 and 2018 "does not in any way support

the summonsing of information or documentation for the years 2005 through

2016[,]" because such business profits "'pass-through' to its owners and are taxed

in the year in which they are earned."  (*Id.*, PageID.155; *see also* ECF No. 10,

PageID.256-257.)  Put another way, "[t]here is no information from a domestic

pass-through business for years prior to 2017 which could impact the tax years at

issue."  (ECF No. 9, PageID.159.)  The Government's reply does not expressly

counter Petitioners' pass-through taxation argument (ECF No. 11), nor does its

relevant portion of the joint statement of resolved and unresolved issues (ECF No.

10, PageID.256).

> **v.    Petitioners' *potential* interests in or connections to foreign entities in 2005-2018 is more likely to "shed light" on the same-period Form 5471 examination than the 2017-2018 Form 1040 income tax examination.**

The Government asserts Petitioners had "undisclosed ownership [of] or

employment by foreign and domestic entities[.]"  (ECF No. 5, PageID.69-72.)

Elliott attests:

> During my examination of Chen and Ren's income tax liabilities for 2017 and 2018, I discovered through internet research and third-party contacts that Chen and Ren have potential interests in or connections to a *complex web* of foreign entities formed in Seychelles, China, and the British Virgin Islands.  As discussed above, Chen and Ren's potential ownership interests in foreign entities may affect their 2017 and 2018 income tax liability.

(ECF No. 5-1, PageID.93, ¶ 20 (emphasis added).)  She attests that prior year

records from these entities "are necessary to compute" liabilities regarding

compensation or dividends, income earned even if not distributed, and the "one-

time repatriation tax . . . ."  (*Id*., PageID.97 ¶ 26.)  Also, she represents that the

information sought will assist her in determining the tax consequences of an

exchange of interests in the two ZD entities for "an automobile parts foundry" and

"industrial equipment."  (*Id*., PageID.5-1, PageID.98 ¶ 28.)

21

However, Petitioners represent that they "held no interest in any foreign entities during the periods under examination . . . [,]" and contend that "[m]ost domestic companies [as] to which Elliott seeks information were closed or inactive many years before 2017." (ECF No. 10, PageID.256.) Petitioner Ren's February 28, 2022 declaration is helpful on this point. Petitioner Ren declares that the attached Flow-Chart and Excel Sheet (ECF No. 9-13, PageID.249, 251-253) "each reflect[] the Petitioners' interest or relationship, if any, in foreign and domestic entities." (ECF No. 9-13, PageID.246 ¶ 40.) Tellingly, Petitioners declare that the only inquiry they received from the IRS Agent "regarding foreign entities was IDR 0006 dated August 17, 2020 to which [their] legal counsel responded to each inquiry regarding foreign entities/structures that neither . . . owned, controlled or held any interest in any foreign entities/structures in the years 2017 and 2018." (ECF No. 9-5, PageID.221 ¶ 17; ECF No. 9-13, PageID.246 ¶ 35.) (*See also* ECF No. 9-2, PageID.182-185 [IDR 0006]; ECF Nos. 9-3 [Sept. 14, 2020 response].)

And, even if Petitioners were found to have undisclosed interests in or connections to foreign entities for the period 2005-2018, such information for the years 2005-2016 would be more likely to "shed light" on Elliott's "examination to determine the possible penalties against Petitioners for failure to report their interests in foreign corporations (Form 5471) for 2005-2018[,]" (ECF No. 11-1, PageID.269 ¶ 6), than it would the 2017-2018 (Form 1040) income tax

22

examination for 2017-2018.  As noted above, one wonders why the IRS does not seek the 2005 to 2016 information by issuing a related summons in connection with the Form 5471 Penalty examination.

### vi.   Summation as to scope

Petitioners argue that "[t]he Summonses seek information not relevant to the 2017 and 2018 audit and is overbroad[,]" (ECF No. 9, PageID.158-160).  In its reply, the Government addresses the second *Powell* factor in two ways (ECF No. 11, PageID.264-265), each of which is unavailing.  First, the Government contends that "information may be relevant to both a Form 5471 examination and an income tax examination[;]" however, while this is potentially true, it does not adequately address the relevance of the summonses' breadth (2005-2018) to the narrower income tax examination in question (2017-2018).  Second, the Government focuses on *gifts*, for which the examination period is 2017; here, where the income tax examination covers two years, the reference to a single-year gift examination does not support the conclusion that a summons spanning thirteen years is relevant.  Moreover, in seeking information "dating back to 2005" (ECF No. 5, PageID.71, 78, 79, 82), the Government does not suggest an alternative, narrower, perhaps more reasonable "look-back" period; instead, the Government takes an all-or-nothing approach.  Thus, the Court has no solid basis for choosing a third path – *e.g.*, a three to seven year look back period – without appearing arbitrary in its

23

approach.  In support of its examination of a two year tax liability, the Government

wants to conduct a sweeping exploration that goes back more than thirteen years,

seemingly because "at least some of these entities were created or were in

existence in 2005[,]" and Ms. Elliott conjectures that "understanding how Chen

and Ren have used foreign and domestic entities for financial purposes in prior

years would help me understand how they used those entities in 2017 and 2018."

(ECF No. 5-1, PageID.89 ¶ 17 ECF No. 5, PageID.78.)  However, this is the very

type of "unrestricted license to rummage through the office files of an accountant

in the hope of perchance discovering information" that is precluded.  *Theodore*,

479 F.2d at 754.  Accordingly, the summonses in the income tax (Form 1040)

examination should be limited to the years 2017-2018.

### 3.   FACTOR 3:  Whether the information sought is already within the Commissioner's possession?

In their response, Petitioners contend that they "have already provided all

necessary information regarding their bank accounts, their foreign gifts received[,]

and the entities owned by them in 2017 and 2018."  (ECF No. 9, PageID.158; *see*

*also* Forms 5471, 114, & 3520.)  According to the Government, "the *summoned*

information is not already within the IRS's possession . . . ."  (ECF No. 5,

PageID.82 (emphasis added); ECF No. 11, PageID.265-266.)  As Ms. Elliott

provides in her recent declaration:

24

> Other than the package of documents my office received from Hsieh on October 19, 2021, that I have not reviewed due to the pendency of this litigation, the CPAs, Hsieh and Wang, have not produced any of the documents or information requested in the summonses at issue to the IRS.  The IRS is not in possession of the books, records, paper, and other data sought by the summonses.

(ECF No. 11-1, PageID.272 ¶ 12.)  (*See also* ECF No. 5-1, PageID.99 ¶¶ 33-35.)

In the joint statement, Petitioners contend that they have "filed all tax returns for 2005-2016," and that "2 years of examination activity regarding [their] interests in foreign/domestic entities for 2005-2018" has "produced a multitude of documents/information including what Respondent now seeks via summonses." (ECF No. 10, PageID.257.)  Yet, as the Government points out, "the IRS is entitled to obtain relevant records from third parties to compare for accuracy any records obtained from the taxpayer."  *Sugarloaf Funding, LLC v. U.S. Dep't Of The Treasury*, 584 F.3d 340, 350 (1st Cir. 2009).  (ECF No. 11, PageID.265-266.)

### 4.   Whether information from 2005 through 2016 is barred by the statute of limitations?

One final point is necessary.  Petitioners claim that the years prior to 2017 – *i.e.*, 2005 through 2016 – are "barred by the statute of limitations[.]"  (ECF No. 1, PageID.5 ¶ 10, 6 ¶ 14; ECF No. 1-4, PageID.37, 42-43.)  Presumably, this is a reference to the "three-year statute of limitations" mentioned in *Powell*, 379 U.S. at 49, 57.  (*See* 26 U.S.C. § 6501.)  The Government contends that the statute of

25

limitations "is irrelevant to the determination of abuse of process under Section 7602." (ECF No. 5, PageID.82.)

The Government has the better argument, because it "need make no showing of probable cause to suspect fraud unless the taxpayer raises a substantial question that judicial enforcement of the administrative summons would be an abusive use of the court's process, *predicated on more than the fact of re-examination and the running of the statute of limitations on ordinary tax liability*." *Powell*, 379 U.S. at 51 (emphasis added). Thus, on its own, the statute of limitations argument is insufficient to illustrate that enforcement of the summonses would constitute an abuse of process.

### F.    Conclusion

As discussed above, it is **RECOMMENDED** that the Court: **(1) GRANT** the petition to quash 3rd party IRS summonses (ECF No. 1), but only to the extent the summonses seek information for 2005 to 2016; and, **(2) DENY** Respondents' motion to dismiss (ECF No. 5), but only to the extent it defends the request for information for 2005 to 2016. In sum, Petitioners should be required to respond to the summons, but only to the extent they seek information for 2017 and 2018.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must precisely recite the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  May 17, 2022

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE

27